08 CV 4478

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AEROTEL, LTD.,<br><br>               Plaintiff,<br><br>v.<br><br>IDT CORPORATION,<br><br>               Defendant. | "ECF CASE"<br><br>Civil Action No. _____<br><br>**COMPLAINT**<br><br>***(Demand for Jury Trial)*** |

Plaintiff Aerotel, Ltd., ("Aerotel"), by and through their attorneys Ropes & Gray

LLP and Ostrager Chong Flaherty & Broitman P.C., complaining of defendant, avers upon

information and belief, except as to paragraphs 1, 2 and 6 through 10, 12 and 16, as follows:

### Nature Of Action

1.      This is a claim for breach of an agreement dated August 17, 2007 (the

"Settlement Agreement") in connection with the settlement of a patent infringement action in

this Court captioned *Aerotel, Ltd. et al. v. IDT Corporation*, Case No. 03 Civ. 6496

(RJH)(FM)(the "Civil Action").  A Stipulation and Order of Dismissal in the Civil Action was

entered by the Court on September 27, 2007.   Aerotel asserts in the present action claims for

breach of the Settlement Agreement, anticipatory breach and breach of an implied covenant of

good faith and fair dealing.

## The Parties

2.      Aerotel, Ltd. is a corporation organized and existing under the laws of Israel, having its principal place of business at 19 Hamashbir Street, Holon 58856, Israel.

3.      IDT Corporation is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 520 Broad Street, Newark, New Jersey 07102.

## Jurisdiction and Venue

4.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332 in that this action is between citizens of a State and a subject of a foreign state, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

5.      Venue in this district is proper pursuant to 28 U.S.C. § 1391.

## The Settlement Agreement

6.      On August 17, 2007, IDT's Chairman of the Board, Howard Jonas, and Aerotel's Chairman of the Board, Eli Nhaissi, concluded a settlement of the Civil Action. The Settlement Agreement was memorialized in a hand written document written by Howard Jonas and signed by Mr. Jonas and Mr. Nhaissi. A copy of the Settlement Agreement is annexed as Exhibit 1.

7.      Pursuant to the Settlement Agreement, IDT agreed to pay Aerotel an initial cash payment in the amount of $15 million.  In addition to the initial payment of $15 million, the Settlement Agreement provides for further consideration by IDT in the form of IDT brand products for distribution by Aerotel at wholesale.  IDT undertook in the Settlement Agreement to "give" to Aerotel, IDT brand "prepaid phone cards or PINs."  The Settlement

2

Agreement does not require Aerotel to make any payment for the IDT branded cards or PINS. The IDT brand product is to be provided to Aerotel in three annual draws on the 1st of October 2007, 2008 and 2009. The size of each annual draw is to be measured only by IDT's cost for processing the termination of telephone calls (the "cost of termination (without origination or SG&A)") placed by consumers using IDT's branded prepaid phone cards. The parties agreed that IDT would give to Aerotel in each annual draw IDT branded product having a termination cost of $5 million. Mr. Jonas and Mr. Nhaissi arrived at the $5 million Termination Cost value in order to yield to Aerotel at least $30 million in wholesale value from sale of the IDT branded products, for a total settlement value of at least $45 million.

8.      The Settlement Agreement provides for both cards and PINs in order to enable Aerotel to do business with PINs over the internet, should it choose to do so.

9.      On or about September 24, 2007, pursuant to the Settlement Agreement, IDT made the agreed-upon payment in the amount of $15 million.

10.      On September 27, 2007, the Court entered a Stipulated Order of Dismissal (copy annexed as Exhibit 2). The Order recited the entry of the August 17, 2007 Settlement Agreement and provided for dismissal with prejudice of all claims by the parties, including Aerotel USA, Inc. and Aerotel U.S.A., LLC which are licensing agents for Aerotel, LTD. under common ownership with Aerotel, Ltd.

11.      IDT has refused to further comply with the Settlement Agreement and has refused to give to Aerotel the first annual $5 million Termination Cost draw due October 1, 2007. As hereinafter set forth, IDT has engaged in an ongoing course of bad faith conduct in connection with the implementation of the Settlement Agreement with the intent of depriving

Aerotel of the value of the bargained-for cards and PINs consideration.

12.    In an effort to implement the October 1, 2007 draw, Aerotel requested the draw and identified IDT branded cards for the draw.

13.    IDT failed to give Aerotel the required October 1, 2007 draw specified in the Settlement Agreement and has failed to remedy this breach of the Settlement Agreement. To the contrary, as set out below, IDT has made clear that it refuses to comply with the Settlement Agreement with respect to the October 1, 2007 draw and has made plain its intention not to comply with respect to the October 1, 2008 and October 1, 2009 draws.

14.    On or about December 17, 2007, following repeated requests by Aerotel, a meeting was scheduled between Eli Nhaissi and Mark E. Knoller, Executive Vice President of IDT, to discuss the Settlement Agreement. At the meeting, Aerotel again requested the first $5 million draw under the Settlement Agreement. Mr. Knoller told Mr. Nhaissi that IDT, contrary to the Settlement Agreement, would not provide IDT branded cards and PINS, but only unbranded PINs. In addition, and also contrary to the Settlement Agreement, Mr. Knoller told Mr. Nhaissi that Aerotel would be required to pay origination costs and selling, general and administrative costs ("SG&A") for the PINs.

15.    Following the December 17, 2007 meeting, Aerotel repeatedly requested that Mr. Jonas agree to meet to discuss implementation of the Settlement Agreement. Mr. Jonas declined to meet.

16.    On or about February 8, 2008, IDT purported to comply with the Settlement Agreement by sending to Aerotel a CD containing PINs. IDT arbitrarily priced the PINs to consumers at a cost per minute about five times the market price for IDT branded

4

prepaid phone cards and PINs, rendering the PINs commercially unmarketable.

17.    These PINs were not activated and could not be used until Aerotel requested IDT to activate them. In the cover letter accompanying the CD of Pins, IDT again stated its requirement that Aerotel pay origination and SG&A costs and stated it would invoice Aerotel after the PINs were activated and marketed. IDT has since continued to insist that, if Aerotel were to have these PINs activated and to market these PINs, it would have to pay origination and SG&A costs.

18.    After repeated letters and telephone calls, IDT stated that it would substitute some portion of its obligation with cards rather than PINs. However, IDT stated that there likely will be additional costs associated with the cards which Aerotel would have to pay.

19.    IDT has made clear by its statements and conduct that it intends to refuse to comply with the Settlement Agreement with respect to the October 1, 2007, October 1, 2008 and October 1, 2009 draws provided for in the Settlement Agreement.

20.    IDT's conduct and demands, as set forth by Mr. Knoller, have deprived Aerotel of the value of the bargained-for and agreed-upon consideration. The Settlement Agreement expressly provides that the cards or PINs will be "given" to Aerotel. No further payment is required. IDT's demand for payment of origination and SG&A costs, as well as its refusal to provide IDT branded cards, results in Aerotel receiving a small fraction of the value of the agreed-upon consideration.

21.    IDT has acted with the intent to deprive Aerotel of its rights under the Settlement Agreement through its failure to perform pursuant to commercial standards of good faith and fair dealing. Such bad faith is evidenced, *inter alia,* by IDT's insistence upon

5

conditions and terms to its performance which are contrary to the parties' agreement, the

repeated refusal of Mr. Jonas, who negotiated and handwrote the Settlement Agreement to meet

to discuss the dispute concerning the Settlement Agreement, and the proffering of unmarketable

product in purported satisfaction of the first $5 million draw under the Agreement.

22.    IDT has declined repeated requests by Aerotel to address the deficiencies

in its performance under the Agreement.

## First Claim For Relief

### (Breach of Contract)

23.    Aerotel repeats and realleges each of the averments contained in

paragraphs 1 through 22 as if fully set forth herein.

24.    Under the terms of the Settlement Agreement, IDT was obligated to give

to Aerotel IDT branded cards or PINs in three annual $5 million draws as measured by the "cost

of termination (without origination or SG&A)," providing Aerotel with the option of electing

either IDT branded cards or PINs.   The first annual $5 million draw of prepaid phone cards was

to be provided to Aerotel on or before October 1, 2007.   Further draws are due or on before

October 1, 2008 and October 1, 2009.

25.    IDT has failed to comply with the Settlement Agreement, and its

purported compliance, if accepted by Aerotel, would render the bargained-for consideration of

little value.

26.    IDT has breached its obligations under the Settlement Agreement by the

foregoing, and such breach extends to the entirety of its performance under the Settlement

Agreement.

6

27.    Aerotel has suffered damages which cannot be ascertained at this time, but are believed to be at least $30 million, and accordingly, demands an award in such amount plus interest, as appropriate, thereon.

## Second Claim For Relief

### (Anticipatory Breach)

28.    Aerotel repeats and realleges each of the averments contained in paragraphs 1 through 27 as if fully set forth herein.

29.    IDT has repudiated its obligations under the Settlement Agreement by insisting, contrary to the terms of the Settlement Agreement, that Aerotel must pay to IDT origination and SG&A costs associated with prepaid phone cards and PINs.

30.    IDT has further repudiated its obligations under the Settlement Agreement by first insisting that it is not obligated to provide Aerotel with IDT branded cards, but only PINs, and then that it need only provide a "portion" in the form of cards.

31.    Aerotel has at all times been ready, willing, and able to perform its obligations under the Settlement Agreement when performance was due.

32.    IDT's non-performance and insistence upon terms not contained in and contrary to the Settlement Agreement, as a condition for its performance, constitutes an anticipatory breach on its part of the Settlement Agreement.

33.    Aerotel has suffered damages which cannot be ascertained at this time but are believed to be at least $30 million, and accordingly, demands an award in such amount plus interest, as appropriate, thereon.

## Third Claim For Relief

### (Breach of Covenant of Good Faith and Fair Dealing)

34.    Aerotel repeats and realleges each of the averments contained in paragraphs 1 through 33 as if fully set forth herein.

35.    IDT has breached its covenant of good faith and fair dealing through engaging in conduct with the intent of depriving Aerotel of its rights under the Settlement Agreement. Among other acts, by setting the consumer price of the PINs at approximately five times the price charged by IDT for IDT branded cards and PINs, IDT has proffered a commercially unmarketable product in purported satisfaction of the first $5 million draw under the Agreement and has insisted upon conditions and terms to its performance which are contrary to the parties' agreement.

36.    IDT's intent of depriving Aerotel of its rights under the Settlement Agreement is further reflected by the steadfast and repeated refusals of its Chairman of the Board, Howard Jonas, to participate in any discussion concerning the implementation of the Settlement Agreement, notwithstanding that he personally and exclusively negotiated the agreement with Aerotel, and reduced it to a hand written document.

37.    Aerotel has suffered damages which cannot be ascertained at this time but are believed to be at least $30 million, and accordingly, demands an award in such amount plus interest thereon.

8

WHEREFORE, plaintiff demands judgment on behalf of Aerotel, Ltd. against IDT Corporation:

A.    Adjudging that IDT has breached the August 17, 2007 Settlement Agreement;

B.    Adjudging that IDT has anticipatorily breached the August 17, 2007 Settlement Agreement;

C.    Adjudging that IDT has breached its covenant of good faith and fair dealing with respect to the August 17, 2007 Settlement Agreement;

D.    Awarding Aerotel damages in the amount of at least $30,000,000, the exact amount to be determined at trial;

E.    Awarding Aerotel interest, as appropriate, on its damages;

F.    Awarding Aerotel such other relief as the Court may deem fair and just.

Dated: New York, New York
       May 13, 2008

                              Respectfully submitted,

                              Robert C. Morgan
                              Jeanne C. Curtis
                              ROPES & GRAY LLP
                              1211 Avenue of the Americas
                              New York, New York 10036-8704
                              (212) 596-9049

9

OSTRAGER CHONG FLAHERTY
& BROITMAN P.C.


By: _____

Glenn F. Ostrager
Dennis M. Flaherty
Joshua S. Broitman

570 Lexington Avenue
New York, New York 10022-6894
(212) 681-0600

*Attorneys for Aerotel, Ltd.*

# EXHIBIT 1

8/17/07

6N

# Binding Settlement Agreement
## between IDT + Aerotel et al

all mutual claims dropped - no further patent litigation for past, present or future claims by Aerotel or successors against IDT et al.

IDT pays Aerotel $15 (fifteen) million dollars by October 1, 20

IDT makes available (gives) Aerotel - IDT branded cards or PINs will be one third USA domestic only cards or PINs and two thirds international cards or PINs (and) two thirds international cards or pins. Aerotel may set price and surcharges on the cards (no more than 20 different (twenty) variations total without additional programming fees at standard industry surcharges) The cost of termination (without origination (or SS7N)) on these cards and ANs will be $15 fifteen million dollar to IDT. The cards will be made available to Aerotel over 3 (three) years. One third each beginning October 1, 2007, October 1, 2008 + October 1, 2009. Aerotel make take less than one third per year and accumulate balance. But all cards or ANs will expire along with any balance IDT owes Aerotel by October 1, 2015. All charges and surcharge, etc set by Aerotel and which they request IDT to program must be legal.

Signed ~~Oct 17, 2007~~ August 17, 2007

For Aerotel by Eli. ~~Hror~~ NHAISSI

For IDT by Howard Jonas

# EXHIBIT 2



IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

AEROTEL, LTD., AEROTEL U.S.A.,        )
INC., and AEROTEL U.S.A., LLC         )
                                      )
            Plaintiffs,               )
                                      )
    v.                                )
                                      )    Case No. 03 Civ. 6496 (RJH)(FM)
IDT CORPORATION, IDT TELECOM,         )
INC., IDT DOMESTIC TELECOM, INC.,     )
INTEREXCHANGE, INC. and UNION         )
TELECARD ALLIANCE LLC,                )
                                      )
            Defendants.               )
                                      )

## STIPULATED ORDER OF DISMISSAL

Pursuant to Fed. R. Civ. P. 41(a), the parties, Aerotel Ltd., Aerotel U.S.A., Inc. and

Aerotel U.S.A., LLC (collectively "Aerotel") and IDT Corporation, IDT Telecom, Inc., IDT

Domestic Telecom, Inc., InterExchange, Inc. and Union Telecard Alliance LLC (collectively

"IDT"), by and through their respective counsel of record, do hereby stipulate as follows:

1.    In order to settle and dispose of this litigation, Aerotel and IDT have entered into a binding Settlement Agreement dated August 17, 2007 ("the Settlement Agreement") that resolves the pending action.

2.    In accordance with the Settlement Agreement, all claims and counterclaims in this action and all mutual claims of the parties are hereby released and dismissed with prejudice.

3.    Furthermore, in accordance with the Settlement Agreement, the counterclaims IDT has attempted to assert against Eli Nhaissi, Zvi Kamil and R&D Israel Technology Company, Ltd. (collectively "Contingent Counterclaim Defendants") in IDT's "contingent" Answer And Counterclaims To Plaintiff's Amended Complaint, dated August 11, 2006, which document was submitted to the Court but never filed, are hereby released and dismissed with prejudice.

4.    This Stipulated Order of Dismissal shall have no third party beneficiaries and no party not a party to this Stipulated Order of Dismissal may rely on it for collateral estoppel, res judicata or other preclusive effect.

3453570_1.DOC

5.    Each party shall bear its own costs and attorneys' fees.

Date:  September 27, 2007

By: _Robert C. Morgan_
Robert C. Morgan (RM 0248)
Jeanne C. Curtis (JC 4673)
ROPES & GRAY LLP
1251 Avenue of the Americas
New York, New York 10020
Telephone: 212.596.9000
Fax: 212.596.9090

*Attorneys For Plaintiffs Aerotel, Ltd., Aerotel U.S.A., Inc., and Aerotel U.S.A., LLC*

By: _Melissa Roover (RCM by permission)_
Alan M. Grayson (admitted *pro hac vice*)
Melissa Roover (MR 1163)
GRAYSON & KUBLI, P.C.
1420 Spring Hill Road, Suite 230
McLean, Virginia 22102
Telephone: 703.749.0000
Fax: 703.442.8672

*Attorneys For Defendants IDT Corporation, IDT Telecom, Inc., IDT Domestic Telecom, Inc., InterExchange, Inc. and Union Telecard Alliance LLC*

SO ORDERED:

Dated:  9/27/07
New York, NY

_____
United States District Judge

3453870_1.DOC